**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA**

| | | |
|---|---|---|
| **BEASLEY, ALLEN, CROW, METHVIN, PORTIS AND MILES, P.C.** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **THE SMITH LAW FIRM, PLLC,** | ) | **Case No. 2:24-CV-00582** |
| **ROBERT ALLEN SMITH, JR., and** | ) | |
| **PORTER MALOUF, P.A.** | ) | |
| | ) | |
| **Defendants.** | | |

## COMPLAINT

### PARTIES

1.      Plaintiff Beasley, Allen, Crow, Methvin, Portis & Miles, P.C. ("Beasley Allen") is an Alabama Professional Corporation with its principal place of business in Montgomery County, Alabama.

2.      Defendant The Smith Law Firm, PLLC ("Smith Law") is, upon information and belief, a Mississippi Professional Limited Liability Company whose sole member is Allen Smith, a resident citizen of the State of Mississippi.  Smith Law may be served through its registered agent Robert Allen Smith, Jr., 300 Concourse Blvd., Suite 104, Ridgeland, MS 39157.

3.      Defendant Robert Allen Smith, Jr. ("Smith") is a licensed attorney and a resident citizen of the State of Mississippi.  Smith may be served at 224 Hidden Oaks Drive, Ridgeland, MS 39157.

4.    Defendant Porter Malouf, P.A. ("Porter Malouf") is, upon information and belief, a Mississippi Professional Association.  Upon information and belief, the individual members of Porter Malouf are Tim Porter and Patrick Malouf, each of whom are resident citizens of the State of Mississippi.  Porter Malouf may be served through its registered agent Patrick C. Malouf, 825 Ridgewood Road, Ridgeland, MS 39157.

## JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 in that this is an action where the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different States.

6.    This Court has personal jurisdiction over the Defendants as the claims of Beasley Allen arise out of or relate to the Defendants' contacts with Alabama and the Defendants each purposefully availed themselves of the privilege of conducting activities within Alabama, as described in more detail herein.

7.    Venue for this action is appropriate in the Middle District of Alabama in that a substantial part of the events or omissions giving rise to the claim occurred here.  28 U.S.C. § 1391(b)(2).

## STATEMENT OF FACTS

8.    Beasley Allen is a plaintiffs' personal injury law firm that, among other areas, specializes in mass tort lawsuits.

2

9.    In November 2013, Beasley Allen began showing interest in representing cancer victims in claims against Johnson & Johnson relating to its sale of talc based Baby Powder and Shower to Shower ("Talcum Powder Litigation").

10.    Defendants had been involved in investigating such claims for some time and were the first to try a Baby Powder case to verdict against Johnson & Johnson, the case of *Berg v. Johnson & Johnson*, in October 2013.

11.    In December 2013, Defendant Smith reached out to Beasley Allen in Montgomery, Alabama to discuss Beasley Allen's interest in and the potential for a joint venture on Talcum Powder Litigation.

12.    A short time later, Defendants traveled to Montgomery to meet with Beasley Allen lawyers.  During the meeting, Defendants shared with Beasley Allen the evidence they had gathered regarding the Talcum Powder Litigation and promoted the experience, experts, and ability they and their law firms could bring to a joint venture agreement.

13.    At the time, Defendants Smith and Smith Law already had a joint venture agreement with Defendant Porter Malouf.

14.    After further discussions between the parties, ultimately a joint venture agreement dated December 19, 2023, and signed on January 23, 2014, was entered between Beasley Allen, Smith Law, and Porter Malouf for the handling of talcum powder litigation (the "JV Agreement"). It was anticipated by the parties to the JV

3

Agreement that a large amount of the work of the joint venture would be performed at Beasley Allen's office in Montgomery, Alabama, where all future and existing talcum clients were to be directed for intake, obtaining authorizations and medical records, screening, signing up, and handling.

15. Under the JV Agreement, Beasley Allen was responsible for 50% of the work and the Smith Firm/Porter Malouf were responsible for 50% of the work on the Talcum Powder Litigation going forward.

16. The JV Agreement further provided that Beasley Allen would "be responsible for all client contact."

17. After working together to make filing determinations and timely filings, the JV Agreement provided that the parties would be jointly responsible for prosecuting the cases and would work together in doing so.

18. The JV Agreement provided that "all" of the talcum powder clients of each party be jointly represented by the parties to the Joint Venture Agreement.

19. The JV Agreement provided that expenses incurred in connection with the talcum powder litigation be shared proportionally based on each party's percentage interest in any fee, with Beasley Allen responsible for 50% and Smith Law/Porter Malouf responsible for 50%. Such expenses were to be reconciled on a quarterly basis beginning in April of 2014.

20. Subsequent to entry of the JV Agreement, over eleven thousand clients

with talcum powder claims became clients of the joint venture, including over 530 clients residing in Alabama. As contemplated by the JV Agreement, those clients were directed to Beasley Allen's office in Montgomery, Alabama for intake, obtaining authorizations and medical records, screening, signing up, and handling.

21. Beasley Allen has fronted the overwhelming majority of the expenses relating to the Talcum Powder Litigation from its office in Montgomery, Alabama, resulting in the Smith Law Firm and Porter Malouf being required under the JV Agreement to make quarterly payments to Beasley Allen in Montgomery, Alabama to reconcile the expenses. These quarterly reconciliation payments from the Defendants to Beasley Allen, which began in 2014, total more than $15 million.

22. Not only has the Talcum Powder Litigation been extremely expensive to pursue, it has also been extremely time-consuming. As the years have passed, Beasley Allen has committed extensive personnel from its Montgomery, Alabama office to managing and prosecuting the Talcum Powder Litigation. Meanwhile, engagement by the Defendants has diminished to the point that they have not performed anywhere near 50% of the work as required by the JV Agreement.

23. As the years passed and expenses mounted, Defendants Smith and Smith Law have encountered financial difficulties in complying with their obligation to share expenses. After learning that Defendants Smith and Smith Law had borrowed litigation expense money from a litigation funding lender and then after

5

learning more about the extent of Defendants Smith and Smith Law's financial distress, Beasley Allen, at Defendant Smith's request for assistance, agreed to meet with the lenders for Defendants Smith and Smith Law in an effort to work constructively towards a way to resolve their financial problems.

24.    It was in connection with those discussions with the lenders for Defendants Smith and Smith Law that, in the Fall of 2023, Beasley Allen learned for the first time that Defendants Smith and Smith Law had bought out Porter & Malouf's interest in the JV Agreement two years earlier, materially changing the nature of the agreement.  In the Spring of 2024, Beasley Allen learned for the first time that Defendants Smith and Smith Law had not in fact transferred all talcum powder clients to Beasley Allen as required by the JV Agreement but had instead kept a substantial number of such clients a secret and did not disclose them to Beasley Allen.

25.    The financial problems of Defendants Smith and Smith Law have now grown to the point that they are actively undercutting Beasley Allen in settlement negotiations with Johnson & Johnson in an effort to get a settlement that would alleviate their financial problems, but which would not in Beasley Allen's opinion be in the best interest of the joint venture clients.  In a recent filing by Johnson & Johnson, it alleges that Defendant Smith Law has litigation funding loans perhaps as high as $240 million.

26. Johnson & Johnson has twice attempted, and failed, to use bankruptcy in order to dodge its legal responsibility to provide fair and timely compensation to clients of the joint venture and other parties injured from their use of its products containing talcum powder. Beasley Allen, Allen Smith, and the Smith Law Firm opposed these prior bankruptcy attempts by Johnson & Johnson.

27. In May 2024, Johnson & Johnson proposed a third bankruptcy plan to try and resolve the Talcum Powder Litigation. For the proposed "pre-packaged" bankruptcy plan to be filed, Johnson & Johnson needed 75% of talcum powder claimants to vote in favor of the plan.

28. While the proposed resolution of the Talcum Powder Litigation associated with the contemplated third bankruptcy was an improvement over the resolutions contemplated by the two prior failed bankruptcy plans, it still failed to provide fair, timely, and certain compensation to clients of the joint venture. As a result, Beasley Allen – with the knowledge and consent of Defendants Smith and Smith Law - sent a letter to the clients of the joint venture during the week of May 13, 2024, and hosted Town Hall Zoom meetings on July 3, 2024, recommending that the clients of the joint venture vote against this proposed third bankruptcy plan.

29. Although the voting deadline was July 26, 2024, Johnson & Johnson has not announced the results of the vote. The clients of the joint venture and other talcum powder claimants voted decidedly in opposition to Johnson & Johnson's

proposed third bankruptcy plan.  Beasley Allen believes, and on information and belief alleges, that a significant percentage of other talcum powder claimants also voted in opposition to the plan.

30.    Subsequently, Johnson & Johnson presented to Defendant Smith an additional Memorandum of Understanding that, while making improvements to the original third bankruptcy-related resolution plan, still did not provide fair, timely, and certain compensation for the joint venture clients.

31.    On August 26, 2024, Beasley Allen sent a letter to clients of the joint venture which attached a copy of the Memorandum of Understanding and highlighted some of the unacceptable terms it contained.  This letter also indicated that one of Beasley Allen's co-counsel supported the proposal and would actually recommend that clients accept it.

32.    Ultimately, because the Memorandum of Understanding did not provide adequate compensation and there was no way of knowing how much a client would be paid or when they would be paid, Beasley Allen's August 26, 2024, letter recommended that clients reject the proposal.  However, if, after reviewing the Memorandum of Understanding, a client wished to change their vote, they were to let Beasley Allen know.

33.    Upon information and belief, Defendants Allen Smith and Smith Law have continued unilateral negotiations with Johnson & Johnson and have made

commitments related to the proposed third bankruptcy plan for which they have no authority. Defendants Smith and Smith Law have done so despite acknowledging that Beasley Allen partner Andy Birchfield is responsible for negotiating a settlement with Johnson & Johnson on behalf of the clients of the joint venture.

34.     In connection with such unilateral negotiations, Defendants Allen Smith and Smith Law demanded that Beasley Allen provide them with the contact information for all joint venture clients so that they can send the clients a letter urging each of the clients who voted against the bankruptcy to change their vote and now vote in favor of Johnson & Johnson's updated third bankruptcy plan. They have done so despite the fact that the JV Agreement provides that "Beasley Allen shall be responsible for all client contact." Beasley Allen believes, and on information and belief alleges, that Defendant Smith's motivation for doing so is at least in part his desire to alleviate his financial distress.

35.     Defendants Smith Law and Porter Malouf have also failed to comply with their obligation under the JV Agreement to pay 50% of the expenses on a quarterly basis. Defendants Smith Law and Porter Malouf have failed to make all quarterly expense reconciliation payments to Beasley Allen since the third quarter of 2023 and currently owe Beasley Allen $1,164,841.09 for their half of expenses which have been invoiced but not paid.

9

**Count One – Breach of Contract**

36. Beasley Allen incorporates by reference the allegations contained in paragraphs 8 through 35.

37. The January 23, 2014, JV Agreement is a binding and valid contract between Beasley Allen, Smith Law, and Porter Malouf.

38. Beasley Allen has performed its obligations under the JV Agreement.

39. Defendants have breached the JV Agreement by, among other things:

(a) Failing to fulfill their obligation to pay 50% of the expenses of the Talcum Powder Litigation such that Beasley Allen is currently owed $1,164,841.09;

(b) Failing to perform 50% of the work on the Talcum Powder Litigation;

(c) Failing to transfer all existing and future talcum powder clients to Beasley Allen for handling under the JV Agreement;

(d) Breaching and/or anticipatorily breaching their obligation to share fees received from talcum powder cases with Beasley Allen; and

(e) Failing to work together with Beasley Allen in the prosecution of the Talcum Powder Litigation.

40. As a proximate consequence of Defendants' breach of contract,

10

Plaintiff has been injured and damaged in that it has not been fully reimbursed for litigation expenses it advanced on behalf of Defendants; it has incurred the entirely unreimbursed expense of providing disproportionate amounts of work on the Talcum Powder Litigation; it has not received its contractual interest in all of Defendants Smith and Smith Law's talcum powder cases; it has been denied the benefits and value of its bargain with Defendants; it has been caused to expend unnecessary time and expense incurred for the benefit of the joint venture clients to fend off efforts by Defendants Smith and Smith Law to undermine settlement negotiations; and it has been otherwise injured and damaged.

WHEREFORE, Beasley Allen seeks an award of compensatory damages in excess of $75,000, interest, costs, and such other relief to which a jury may find it is entitled.

### Count Two –Fraudulent Suppression

41. Beasley Allen incorporates by reference the allegations of paragraphs 8 through 40.

42. As a result of their obligations under the JV Agreement; of the representations they made in, and in connection with negotiating, the JV Agreement; of their fiduciary and/or confidential relationship with Beasley Allen; of their duty of loyalty to the Joint Venture; of their superior knowledge; and of special circumstances related to this case, Defendants had an ongoing duty to disclose

11

certain material facts to Beasley Allen.

43.     Among those material facts was that Defendants did not have the financial and other resources to comply with the JV agreement, including to provide fifty percent of the work and fifty percent of the litigation expenses,  over what was contemplated to be an extended period of time; that Defendants Smith and Smith Law were either unwilling or unable to make their obligations under the JV Agreement the focus of their practice to the exclusion of unrelated litigation; that Defendants Smith and Smith Law had taken, or had determined to take, outside of the JV Agreement talcum powder cases and represent talcum powder clients in which and in whom Beasley Allen had, or should have had, a contractual interest; that Defendants Smith and Smith Law had bought out the interest of Defendant Porter Malouf and had done so by increasing their debt to a litigation funding entity, thus reducing Beasley Allen's chances that its joint venturers would or could comply with the JV Agreement; that Defendants Smith and Smith Law had entered unilateral negotiations with Johnson & Johnson in a manner which served to undermine the negotiating leverage of the clients of the joint venture; and that Defendants Smith and Smith Law had fallen into such significant debt in connection with the Talcum Powder Litigation that their independent judgment about the Talcum Powder Litigation and the potential settlement of that litigation was objectively subject to question.

44. Rather than disclosing said material facts and such other material facts as may be uncovered through discovery, Defendants suppressed them with the intent to deceive Beasley Allen.

45. Without knowledge of the material facts suppressed by Defendants, Beasley Allen entered the joint venture agreement with Defendants on the specific terms set out in the JV Agreement; continued working with Defendants after the time Defendants became fully aware that Smith and Smith Law could not meet their financial obligations in connection with the Talcum Powder Litigation and could not continue pursuing the litigation in the way it should be pursued; continued paying litigation expenses and contributing disproportionate amounts of work for the benefit of Defendants and the joint venture; continued including Defendants Smith and Smith Law in all talcum powder cases received by Beasley Allen; and forbore from pursuing its legal remedies.

46. As a proximate consequence of said suppression, Beasley Allen was injured in that it has been caused to pay without reimbursement certain of Defendants' share of Talcum Powder Litigation expenses; it has been caused to provide disproportional amounts of work on the Talcum Powder Litigation without compensation from Defendants for the performance of work Defendants should have performed; it has been caused to receive less compensation or to have an expectancy of less compensation on cases that have been, or will be, successfully litigated; it has

13

been caused to spend time and money resisting efforts by Defendants Smith and Smith Law to promote and enter a settlement that is not in the best interest of its clients; and it has been caused to spend excess time and money in connection with settlement negotiations in the Talcum Powder Litigation that have been undermined by Defendants Smith and Smith Law. Beasley Allen has been otherwise injured and damaged, included in the ways alleged in Count I of this Complaint.

WHEREFORE, Beasley Allen seeks an award of compensatory damages in excess of $75,000, and punitive damages, interest, costs, and such other relief to which a jury may find it is entitled.

s/ Robert D. Segall
Robert D. Segall (ASB-7354-E68R)
J. David Martin (ASB-7387-A54J)
COPELAND, FRANCO, SCREWS & GILL, P.A.
Post Office Box 347
444 South Perry Street (36104)
Montgomery, Alabama 36101-0347
T: 334.834.1180   F: 334.834.3172
Email: segall@copelandfranco.com
Email: martin@copelandfranco.com

**Attorneys for Plaintiff Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.**

## JURY DEMAND

PLAINTIFF DEMANDS TRIAL BY JURY ON ALL ISSUES OF THIS CAUSE.

s/  Robert D. Segall
OF COUNSEL

**Please serve Defendants via Certified Mail as follows:**

The Smith Law Firm, PLLC
c/o Robert Allen Smith, Jr.
300 Concourse Blvd., Suite 104
Ridgeland, MS  39157

Robert Allen Smith, Jr.
224 Hidden Oaks Drive
Ridgeland, MS  39157

Porter Malouf, P.A.
c/o Patrick C. Malouf
825 Ridgewood Road
Ridgeland, MS  39157