## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **BEASLEY, ALLEN, CROW, METHVIN, PORTIS AND MILES, P.C.** | ) ) ) | |
| | ) | **JURY TRIAL** |
| **Plaintiff,** | ) | **DEMANDED** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **THE SMITH LAW FIRM, PLLC, ROBERT ALLEN SMITH, JR., and PORTER MALOUF, P.A.** | ) ) ) | **Case No. 2:24-CV-00582** |
| **Defendants.** | | |

### FIRST AMENDED COMPLAINT

#### PARTIES

1.      Plaintiff Beasley, Allen, Crow, Methvin, Portis & Miles, P.C. ("Beasley Allen") is an Alabama Professional Corporation with its principal place of business in Montgomery County, Alabama.

2.      Defendant The Smith Law Firm, PLLC ("Smith Law") is, upon information and belief, a Mississippi Professional Limited Liability Company whose sole member is Allen Smith, a resident citizen of the State of Mississippi.  Smith Law may be served through its registered agent Robert Allen Smith, Jr., 300 Concourse Blvd., Suite 104, Ridgeland, MS 39157.

3.      Defendant Robert Allen Smith, Jr. ("Smith") is a licensed attorney and a resident citizen of the State of Mississippi.  Smith may be served at 224 Hidden Oaks Drive, Ridgeland, MS 39157.

4.      Defendant Porter Malouf, P.A. ("Porter Malouf") is, upon information and belief, a Mississippi Professional Association.  Upon information and belief, the individual members of Porter Malouf are Tim Porter and Patrick Malouf, each of whom are resident citizens of the State of Mississippi.  Porter Malouf may be served through its registered agent Patrick C. Malouf, 825 Ridgewood Road, Ridgeland, MS 39157.

JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 in that this is an action where the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different States.

6.      This Court has personal jurisdiction over the Defendants as the claims of Beasley Allen arise out of or relate to the Defendants' contacts with Alabama and the Defendants each purposefully availed themselves of the privilege of conducting activities within Alabama, as described in more detail herein.

7.      Venue for this action is appropriate in the Middle District of Alabama in that a substantial part of the events or omissions giving rise to the claim occurred here.  28 U.S.C. § 1391(b)(2).

## STATEMENT OF FACTS

8.    Beasley Allen is a plaintiffs' personal injury law firm that, among other areas, specializes in mass tort lawsuits.

9.    In November 2013, Beasley Allen began showing interest in representing cancer victims in claims against Johnson & Johnson relating to its sale of talc-based Baby Powder and Shower to Shower ("Talcum Powder Litigation").

10.    Defendants had been involved in investigating such claims for some time and were the first to try a Baby Powder case to verdict against Johnson & Johnson, the case of *Berg v. Johnson & Johnson*, in October 2013.

11.    In December 2013, Defendant Smith reached out to Beasley Allen in Montgomery, Alabama to discuss Beasley Allen's interest in and the potential for a joint venture on Talcum Powder Litigation.

12.    A short time later, Defendants traveled to Montgomery to meet with Beasley Allen lawyers.  During the meeting, Defendants shared with Beasley Allen the evidence they had gathered regarding the Talcum Powder Litigation and promoted the experience, experts, and ability they and their law firms could bring to a joint venture agreement.

13.    At the time, Defendants Smith and Smith Law already had a joint venture agreement with Defendant Porter Malouf.

14.    After further discussions between the parties, ultimately a joint venture

3

agreement dated December 19, 2013, and signed on January 23, 2014, was entered between Beasley Allen, Smith Law, and Porter Malouf for the handling of talcum powder litigation (the "JV Agreement"). Thereafter, the parties orally agreed that Plaintiff would handle all global settlement negotiations with Johnson & Johnson.

15.    It was anticipated by the parties to the JV Agreement that a large amount of the work of the joint venture would be performed at Beasley Allen's office in Montgomery, Alabama, where all future and existing talcum clients were to be directed for in-take, obtaining authorizations and medical records, screening, signing up, and handling.

16.    Under the JV Agreement, Beasley Allen was responsible for 50% of the work and the Smith Firm/Porter Malouf were responsible for 50% of the work on the Talcum Powder Litigation going forward.

17.    The JV Agreement further provided that Beasley Allen would "be responsible for all client contact."

18.    After working together to make filing determinations and timely filings, the JV Agreement provided that the parties would be jointly responsible for prosecuting the cases and would work together in doing so.

19.    The JV Agreement provided that "all" of the talcum powder clients of each party be jointly represented by the parties to the Joint Venture Agreement.

20.    The JV Agreement provided that expenses incurred in connection with

4

the talcum powder litigation be shared proportionally based on each party's percentage interest in any fee, with Beasley Allen responsible for 50% and Smith Law/Porter Malouf responsible for 50%.  Such expenses were to be reconciled on a quarterly basis beginning in April of 2014.

21.    Subsequent to entry of the JV Agreement, over eleven thousand five hundred clients with talcum powder claims became jointly represented under the joint venture, including over 530 clients residing in Alabama.  As contemplated by the JV Agreement, those clients were directed to Beasley Allen's office in Montgomery, Alabama for in-take, obtaining authorizations and medical records, screening, signing up, and handling.

22.    Beasley Allen has fronted the overwhelming majority of the expenses relating to the Talcum Powder Litigation from its office in Montgomery, Alabama, resulting in the Smith Law Firm and Porter Malouf being required under the JV Agreement to make quarterly payments to Beasley Allen in Montgomery, Alabama to reconcile the expenses.  These quarterly reconciliation payments from the Defendants to Beasley Allen, which began in 2014, total more than $15 million.

23.    Not only has the Talcum Powder Litigation been extremely expensive to pursue, it has also been extremely labor intensive and time-consuming.  As the years have passed, Beasley Allen has hired additional staff and committed extensive personnel from its Montgomery, Alabama office for the management and

prosecution of the Talcum Powder Litigation. Meanwhile, engagement by the Defendants has diminished to the point that they have not performed anywhere near 50% of the work as required by the JV Agreement.

24.    As the years passed and expenses mounted, Defendants Smith and Smith Law appear to have encountered financial difficulties in complying with their obligation to share expenses. After learning that Defendants Smith and Smith Law had borrowed litigation expense money from a litigation funding lender and then after learning more about the extent of Defendants Smith and Smith Law's financial distress, Beasley Allen, at Defendant Smith's request for assistance, agreed to meet with the lenders for Defendants Smith and Smith Law in an effort to work constructively towards a way to resolve their financial problems.

25.    It was in connection with those discussions with the lenders for Defendants Smith and Smith Law that, in the Fall of 2023, Beasley Allen learned for the first time that Defendants Smith and Smith Law had bought out Porter & Malouf's interest in the JV Agreement two years earlier, materially changing the nature of the agreement.

26.    In January of 2024, Beasley Allen learned for the first time that Defendants Smith and Smith Law had not in fact transferred all talcum powder clients to Beasley Allen as required by the JV Agreement but had instead kept a substantial number of such clients a secret and did not disclose them to Beasley

6

Allen.

27.      The financial problems of Defendants Smith and Smith Law have now grown to the point that they are actively undercutting Beasley Allen in settlement negotiations with Johnson & Johnson in what appears to be an effort to get a settlement that would alleviate their financial problems, but which would not in Beasley Allen's opinion be in the best interest of the jointly represented clients.  In a recent filing by Johnson & Johnson, it alleges that Defendant Smith Law has litigation funding loans perhaps as high as $240 million.

28.      Johnson & Johnson has twice attempted, and failed, to use bankruptcy in order to dodge its legal responsibility to provide fair and timely compensation to jointly represented clients and other parties injured from their use of its products containing talcum powder.  Beasley Allen, Allen Smith, and the Smith Law Firm opposed these prior bankruptcy attempts by Johnson & Johnson.

29.      In May 2024, Johnson & Johnson proposed a third bankruptcy plan to try to resolve the Talcum Powder Litigation. However, for this proposed "pre-packaged" bankruptcy plan to be filed, Johnson & Johnson needed 75% of talcum powder claimants to vote in favor of the plan.

30.      The proposed resolution of the Talcum Powder Litigation associated with the contemplated third bankruptcy still failed to provide fair, timely, and certain compensation to the jointly represented clients.  As a result, Beasley Allen – with

the knowledge and consent of Defendants Smith and Smith Law - sent multiple communications to the jointly represented clients regarding the proposed plan and hosted Town Hall Zoom meetings on July 3, 2024, recommending that the jointly represented clients vote against this proposed third bankruptcy plan.

31.     On July 26, 2024, Beasley Allen submitted a master ballot on behalf of the jointly represented clients reflecting that 11,434 clients voted to reject the bankruptcy plan and 69 voted to accept the bankruptcy plan.

32.     A sufficient percentage of talcum powder claimants voted in opposition to the plan such that as of the end of the voting deadline, the plan had failed to receive the 75% approval threshold required by section 524(g) of the Bankruptcy Code to confirm Johnson & Johnson's plan.

33.     In an effort to garner more support for the plan, Johnson & Johnson subsequently presented to Defendant Smith and the Smith Law Firm a proposed Memorandum of Understanding that, while making improvements to the original third bankruptcy-related resolution plan, included illusory terms and still did not provide fair, timely, and certain compensation for the jointly represented  clients. Defendant Smith and the Smith Law Firm sent the proposed Memorandum of Understanding ("MOU") to Beasley Allen describing it as a formal offer of settlement and expressing his full support for the MOU.  Most of the financial terms contained within the MOU had previously been offered by Johnson & Johnson and

rejected by Beasley Allen partner Andy Birchfield.

34.    On August 26, 2024, Beasley Allen sent a letter to the jointly represented clients which attached a copy of the proposed MOU and highlighted some of the unacceptable terms it contained.  This letter also indicated that one of Beasley Allen's co-counsel supported the proposal and would actually recommend that clients accept it.

35.    The proposed MOU still did not provide adequate compensation and there was no way of knowing how much a client would be paid or when they would be paid.

36.    Thereafter, Defendants Allen Smith and Smith Law continued unilateral negotiations with Johnson & Johnson despite previously acknowledging that Beasley Allen partner Andy Birchfield was responsible for negotiating a settlement with Johnson & Johnson on behalf of the jointly represented clients. Beasley Allen has since learned that Defendants Allen Smith and Smith Law had in fact been engaged in secret "parallel" negotiations with Johnson & Johnson since at least 2022.

37.    Sometime in late August, a Memorandum of Understanding was executed between Johnson & Johnson and the Smith Law Firm (the "Smith MOU"). The effective date of the Smith MOU was August 30, 2024.

38.    Importantly, the Smith MOU contained certain conditions precedent to

Johnson and Johnson's obligations to do anything, one of which required the Smith Law Firm, on or before September 16, 2024, to request that the solicitation agent for the bankruptcy plan to **change the votes** of the Talc clients the Smith Law Firm represented such that at least 95% of the Smith Law Firm's clients would now vote in favor of the Johnson & Johnson bankruptcy plan. These clients included the 11,503 jointly represented clients as well as the talc clients Smith and Smith Law Firm had attempted to conceal from Beasley Allen.

39.    Under the Smith MOU, Johnson & Johnson agreed that it would cease its pursuit of discovery regarding litigation financing relating to Smith and the Smith Law firm.

40.    In connection with their agreement to now change the votes of the jointly represented clients who opposed the bankruptcy plan, Defendants Allen Smith and Smith Law demanded that Beasley Allen provide them with the contact information for all the jointly represented clients so that they could send the clients a letter urging each of the clients who voted against the bankruptcy to change their vote and now vote in favor of Johnson & Johnson's updated third bankruptcy plan. Those Defendants did so despite the fact that the JV Agreement provides that "Beasley Allen shall be responsible for all client contact." Beasley Allen believes, and on information and belief alleges, that Defendant Smith's motivation for doing so is at least in part his desire to alleviate his financial distress.

10

41.     On September 11, 2024, Allen Smith and the Smith Law Firm sent a letter by email and FedEx to the jointly represented clients promoting the terms of the Smith MOU (though not including a copy of the actual agreement) and urging all clients to now vote to approve the new bankruptcy plan.  The letter provides a link for voting and asks that the clients vote in **two days**, by September 13.[1]  "If you choose not to vote, I will submit your vote for approval of the new Plan in my power as attorney authorized to prosecute your case."  The letter failed to disclose to clients the fact that Smith and Smith Law was currently in default on significant litigation funding debt which objectively would cause a reasonable person to question their settlement recommendation and further failed to disclose to clients that J&J agreed in the Smith MOU to not further pursue discovery into the litigation funding debt of Smith and Smith Law.

42.     Smith and Smith Law Firm subsequently submitted a Master Ballot on behalf of at least 95% of the clients it represented that purported to change the votes of most of those who previously rejected the plan to now support it, without proper authority to do so.

43.     Three days after Smith and the Smith Law Firm submitted a Master Ballot on behalf of the jointly represented clients which purported to change the votes of most of those rejecting the plan, Johnson & Johnson subsidiary Red River

---

[1] Smith and Smith Law later extended the voting deadline two more days.

Talc, LLC, filed for Chapter 11 Bankruptcy in Texas, alleging that over 75% of talc claimants supported the bankruptcy plan.

44.     Without the Master Ballot submitted by Smith and the Smith Law Firm purporting to change the votes of the jointly represented clients to support the bankruptcy plan, the 75% approval required by section 524(g) of the Bankruptcy Code to confirm Johnson & Johnson's plan would not have been attained at the time of the bankruptcy filing on September 20, 2024.

45.     Defendants Smith Law and Porter Malouf have also failed to comply with their obligation under the JV Agreement to pay 50% of the expenses on a quarterly basis.  Defendants Smith Law and Porter Malouf have failed to make all quarterly expense reconciliation payments to Beasley Allen since the third quarter of 2023 and currently owe Beasley Allen at least $735,584.67 for their half of expenses which have been invoiced but not paid.

### Count One – Breach of Contract

46.     Beasley Allen incorporates by reference the allegations contained in paragraphs 8 through 45.

47.     The January 23, 2014, JV Agreement is/was a binding and valid contract between Beasley Allen, Smith Law, and Porter Malouf.

48.     Beasley Allen has performed its obligations under the JV Agreement.

49.     Defendants have breached the JV Agreement by, among other things:

(a)     Failing to fulfill their obligation to pay 50% of the expenses of the Talcum Powder Litigation such that Beasley Allen is currently owed at least $735,584.67;

(b)     Failing to perform 50% of the work on the Talcum Powder Litigation;

(c)     Failing to transfer all existing and future talcum powder clients to Beasley Allen for handling under the JV Agreement;

(d)     Breaching and/or anticipatorily breaching their obligation to share fees received from talcum powder cases with Beasley Allen;

(e)      Interfering in, disrupting, and undermining global settlement discussions with Johnson & Johnson which the parties had agreed would be conducted by Plaintiff.

(e)     Purporting to change the votes of jointly represented clients to support the third bankruptcy plan without proper authority or consent from the clients; and

(f)     Failing to work together with Beasley Allen in the prosecution of the Talcum Powder Litigation and instead working separately from Beasley Allen in a clandestine effort to settle the litigation without the knowledge or agreement of Beasley Allen.

50.    As a proximate consequence of Defendants' breach of contract, Plaintiff has been injured and damaged in that it has not been fully reimbursed for litigation expenses it advanced on behalf of Defendants; it has incurred the entirely unreimbursed expense of providing disproportionate amounts of work on the Talcum Powder Litigation; it has not received its contractual interest in all of Defendants Smith and Smith Law's talcum powder cases; it has been denied the benefits and value of its bargain with Defendants; it has lost profits; it has been caused to expend unnecessary time and expense incurred for the benefit of the jointly represented clients to fend off efforts by Defendants Smith and Smith Law to undermine settlement negotiations and to defeat Johnson & Johnson's latest bankruptcy effort; and it has been otherwise injured and damaged.

WHEREFORE, Beasley Allen seeks an award of compensatory damages in excess of $75,000, interest, costs, and such other relief to which a jury may find it is entitled.

## Count Two –Fraudulent Suppression

51.    Beasley Allen incorporates by reference the allegations of paragraphs 8 through 50.

52.    As a result of their obligations under the JV Agreement; of the representations they made in, and in connection with negotiating, the JV Agreement and thereafter; of their fiduciary and/or confidential relationship with Beasley Allen;

of their duty of loyalty to the Joint Venture; of their superior knowledge; and of special circumstances related to this case, Defendants had an ongoing duty to disclose certain material facts to Beasley Allen.

53.    Among those material facts was that Defendants did not have the financial and other resources to comply with the JV Agreement, including to provide fifty percent of the work and fifty percent of the litigation expenses,  over what was contemplated to be an extended period of time; that Defendants Smith and Smith Law were either unwilling or unable to make their obligations under the JV Agreement the focus of their practice to the exclusion of unrelated litigation; that Defendants Smith and Smith Law did not interpret or regard the JV Agreement as requiring that they and Porter Malouf work even approximately 50% of the total hours performed by the parties to the JV Agreement and that Defendants Smith and Smith Law had no intention to be obligated to perform, or to perform, even approximately 50% of the total hours performed by the parties to the JV Agreement with or without the involvement of Porter Malouf; that Defendants Smith and Smith Law had taken, or had determined to take, outside of the JV Agreement talcum powder cases and represent talcum powder clients in which and in whom Beasley Allen had, or should have had, a contractual interest; that Defendants Smith and Smith Law had bought out the interest of Defendant Porter Malouf and, on information and belief, had done so by increasing their debt to a litigation funding

entity, thus reducing Beasley Allen's chances that its joint venturers would or could comply with the JV Agreement; that Defendants Smith and Smith Law were engaged in parallel negotiations with Johnson & Johnson in a manner which served to undermine the negotiating leverage of the jointly represented clients; and that Defendants Smith and Smith Law had fallen into such significant debt in connection with the Talcum Powder Litigation or otherwise that their independent judgment about the Talcum Powder Litigation and the potential settlement of that litigation was objectively subject to question.

54.   Rather than disclosing said material facts and such other material facts as may be uncovered through discovery, Defendants suppressed them with the intent to deceive Beasley Allen.

55.   Without knowledge of the material facts suppressed by Defendants, Beasley Allen entered the JV Agreement with Defendants on the specific terms set out in the JV Agreement; continued working with Defendants after the time Defendants became fully aware that Smith and Smith Law could not meet their financial obligations in connection with the Talcum Powder Litigation and could not continue pursuing the litigation in the way it should be pursued; continued paying litigation expenses and contributing disproportionate amounts of work for the benefit of Defendants and the joint venture; continued including Defendants Smith and Smith Law in all talcum powder cases received by Beasley Allen; and forbore from

pursuing its legal remedies.

56.  As a proximate consequence of said suppression, Beasley Allen was injured as set out in Count I of this Amended Complaint, and in that it  agreed in the JV Agreement to divide certain proceeds of the Talcum Powder Litigation equally with Defendants Smith and Smith Law to the full amount of which share of proceeds said Defendants are not entitled and has been caused to incur greater internal costs and expenses to perform work in said litigation that should have been borne by Defendants Smith and Smith Law; it has  been caused to pay without reimbursement certain of Defendants' share of Talcum Powder Litigation expenses; it has been caused to provide disproportional amounts of work on the Talcum Powder Litigation without compensation from Defendants for the performance of work Defendants should have performed; it has been caused to receive less compensation or to have an expectancy of less compensation on cases that have been, or will be, successfully litigated; it has been caused to spend time and money resisting efforts by Defendants Smith and Smith Law to promote and enter a settlement that is not in the best interest of its clients; it has been caused to spend excess time and money in connection with settlement negotiations in the Talcum Powder Litigation that have been undermined by Defendants Smith and Smith Law; and it has been caused to spend time and money in connection with challenging the unauthorized change of client votes and opposing Johnson & Johnson's latest bankruptcy.  Beasley Allen has been otherwise

injured and damaged, included in the ways alleged in Count I of this Complaint.

WHEREFORE, Beasley Allen seeks an award of compensatory damages in excess of $75,000, and punitive damages, interest, costs, and such other relief to which a jury may find it is entitled.

### Count Three – Misrepresentation

57.    Beasley Allen incorporates by reference the allegations of paragraphs 8 through 56.

58.    On and before January 23, 2014, Defendants Smith and the Smith Law Firm represented to Plaintiff that in connection with a joint venture agreement the parties were negotiating, they and Porter Malouf were responsible for performing generally 50% of the total hours of work performed by the parties pursuant to the JV Agreement.  They further represented that they would in fact perform generally 50% of the said work beginning on the date the parties agreed to the terms of the JV Agreement.  In 2020, they also represented that they agreed Beasley Allen was responsible for handling all global settlement negotiations throughout the litigation.

59.    The said representations were false and were made intentionally with knowledge of their falsity, recklessly and wantonly without knowledge, or innocently and by mistake.  At the time these representations were made, Defendants Smith and the Smith Law Firm had a present intent to deceive Plaintiff into agreeing to the JV Agreement and to not perform as promised.

60.    Said Defendants did not in fact regard the JV Agreement as requiring that they, with or without the Porter Malouf law firm, work generally 50% of the total hours performed by the parties to the JV Agreement. Further, Defendants Smith and Smith Law had no intention of being obligated to perform, or to perform, generally 50% of the total hours performed by the parties to the JV Agreement. Defendants Smith and Smith Law further had no intention of refraining from participating in and interfering with settlement negotiations.

61.    Plaintiff did not discover, and could not reasonably have discovered, the falsity of said Defendants' misrepresentations until less than two years next preceding the filing of this lawsuit.

62.    Plaintiff reasonably relied on the representations of said Defendants by entering the JV Agreement with Defendants and by forbearing in the pursuit of its remedies.

63.    As a proximate consequence of said misrepresentations, Beasley Allen was injured as set out in paragraph 56 of, and as otherwise alleged in, this Amended Complaint

WHEREFORE, Beasley Allen seeks an award of compensatory damages in excess of $75,000, and punitive damages, interest, costs, and such other relief to which a jury may find it is entitled.

19

## Count Four – Breach of Fiduciary Duty

64.    Beasley Allen incorporates by reference the allegations of paragraphs 8 through 63.

65.    Through the relationship of the Parties created by the JV Agreement, including their relationship acting as co-counsel in the pursuit of legal claims on behalf of talc claimants, a fiduciary relationship was created among the Parties.

66.    By the conduct described herein, Smith and the Smith Law Firm have breached their fiduciary duties owed to Beasley Allen.

67.    As a direct and proximate result of the breach of fiduciary duties by Smith and the Smith Law Firm, Beasley Allen has been injured and damaged as alleged in paragraph 56, above.

WHEREFORE, Beasley Allen seeks an award of compensatory damages in excess of $75,000, and punitive damages, interest, costs, and such other relief to which a jury may find it is entitled.

s/  J. David Martin
Robert D. Segall (ASB-7354-E68R)
J. David Martin (ASB-7387-A54J)
COPELAND, FRANCO, SCREWS & GILL, P.A.
Post Office Box 347
444 South Perry Street (36104)
Montgomery, Alabama 36101-0347
T: 334.834.1180  F: 334.834.3172
Email: segall@copelandfranco.com
Email: martin@copelandfranco.com
**Attorneys for Plaintiff Beasley, Allen,
Crow, Methvin, Portis & Miles, P.C.**

20

## **JURY DEMAND**

PLAINTIFF DEMANDS TRIAL BY JURY ON ALL ISSUES OF THIS CAUSE.

                                         s/  J. David Martin
                                        OF COUNSEL

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 12th day of March, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Joel D. Connally
STRENGTH & CONNALLY, LLC
7020 Fain Park Dr., Ste. 3
Montgomery, AL 36117
T:  334/387-2121
Email: jc@strengthconnally.com

Thomas G. Bufkin
Carroll Bufkin, PLLC
1076 Highland Colony Parkway
600 Concourse, Ste. 125
Ridgeland, Mississippi 39157
T: 601/982-5011
tgb@carrollbufkin.com

***Counsel for The Smith Law Firm, PLLC and Robert Allen Smith, Jr.***

Bruce F. Rogers
Elizabeth N. Terenzi
BAINBRIDGE MIMS ROGERS & SMITH, LLP
600 Luckie Dr., Ste. 415
Birmingham, AL 35223
T:  205/879-1100  F:  205/879-4300
Email:  brogers@bainbridgemims.com
Email: bterenzi@bainbridgemims.com

***Counsel for Porter Malouf, P.A.***

   s/ J. David Martin
Of Counsel