## IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C. ) ) ) | |
|        Plaintiff, ) ) | |
| V. ) ) | Case No. 2:24-CV-00582 |
| THE SMITH LAW FIRM, PLLC, ROBERT ALLEN SMITH, JR., and PORTER MALOUF, P.A., ) ) ) ) | |
|        Defendants. ) | |

## <u>MEMORANDUM IN SUPPORT OF MOTION TO DISMISS</u>

For more than 10 years, Beasley and Smith have worked together to pursue talcum powder claims against Johnson and Johnson and its affiliates ("J&J") on behalf of over 12,000 clients.

Between October 2021 and July 2024, J&J proposed three global settlement opportunities in the bankruptcy courts. Beasley and Smith rejected each one. However, in August 2024, Smith and others continued having discussions. As a result, a materially improved $10 billion proposed trust-structure resolution has now emerged ("Proposed Resolution"). The Proposed Resolution is $1.75 billion more than J&J's previous offer.

Smith supports the Proposed Resolution. Beasley opposes it. Irate over Smith breaking ranks, Beasley sued Smith.

Beasley's suit contains contrived claims based on conclusory allegations, but the gravamen of Beasley's suit is its opposition to the Proposed Resolution. Now, however, Beasley finds itself virtually alone in opposing the Proposed Resolution. Nearly every plaintiff firm in the Talc Litigation supports the Proposed Resolution, as does the Talc Claimants Committee, which is appointed by the U.S. Trustee to represent the interests of the Talc claimants in the latest bankruptcy proceeding. Soon, a U.S. Bankruptcy Court Judge will decide whether to confirm a bankruptcy plan that incorporates the Proposed Resolution, in which case 16 years of Talc litigation may finally come to an end. Regardless of the bankruptcy court's decision, however, Beasley's lawsuit should come to an end.

Beasley's First Amended Complaint is long on rhetoric, but short on substance. Its allegations are wholly conclusory, they directly contradict the plain language of the JV Agreement, and/or they are internally inconsistent. Moreover, the allegations fail to satisfy each element of the claims. Finally, Beasley's claims are barred, in whole or in part, by applicable Alabama statutes of limitations and the ripeness doctrine.

For these reasons, and others discussed herein, Beasley's claims against Smith should be dismissed.

## LEGAL AUTHORITY

A Rule 12(b)(6) motion to dismiss "tests the sufficiency of the complaint against the legal standard set forth in Rule 8: 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Morris v. AngioDynamics, Inc.*, 716 F. Supp. 3d 1205, 1209 (M.D. Ala. 2024) (*quoting* Fed. R. Civ. P. 8(a)(2)). A plaintiff's complaint "must contain something more…than…a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (*quoting* C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp 235-236 (3d ed. 2004)). The "plain statement" presented by the complaint also must contain more than mere "labels and conclusions." *Id*. (citation omitted). Stated differently, the complaint must "possess enough heft to 'sho[w] that the pleader is entitled to relief.'" *Id*. at 557. "[S]omething beyond the mere possibility of loss causation must be alleged." *Id*. at 557-58 (*quoting Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005)). Of course, courts are "not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. at 555 (*quoting Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

## FACTS

Smith has been involved in Talc Litigation for approximately 16 years.

Smith associated Porter Malouf, P.A. ("PM"), a Mississippi firm with mass tort experience, to assist with the Talc Litigation. Together, Smith and PM tried the first successful Talc claim against Johnson & Johnson.[1]

In late 2013, Smith contacted Beasley for "assistance in gathering additional [Talc] cases and [] prosecuting them."[2] After a meeting, Beasley partner Ted Meadows drafted a letter agreement describing how the parties will "work together" to manage and prosecute Talc claims.[3] Beasley acknowledged that Smith had "already retained the best experts, conducted discovery which yielded documents that will be difficult (if not impossible) to retrieve a second time around, and gotten a partially favorable verdict…."[4] Beasley agreed "to assist" and offered to "handle initial intake, obtaining necessary authorizations, information, pathology and medical records to appropriately screen each case."[5] Consistent with these administrative tasks, Beasley also offered to be "responsible" for maintaining contact with thousands of Talc clients represented by the parties.[6] [7]

---

[1] *Berg v. Johnson & Johnson, et al.*, No. 4:09-cv-04179-KES (D.S.D.).
[2] JV Agreement, at p. 1. [Ex. A]
[3] *Id*. at p. 1.
[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] Smith Defendants do not dispute that Beasley performed its clerical functions. On day 4 of the Plan Confirmation Hearing, Beasley's lawyer asked Allen Smith: "The bottom line is, you believe, up through

On or about January 23, 2014, Smith and PM signed the agreement Beasley had drafted ("JV Agreement").[8]

In the JV Agreement, Beasley states that "[g]enerally" Smith/PM will be responsible for 50% of the "work" and 50% of the "expenses."[9] However, Beasley does not define the term "work," or *how* or *when* each party's "work" contribution will be determined. Moreover, Beasley's JV Agreement treats Smith and PM as one and does not define or limit how they choose to allocate "work" or "expenses" between them.[10]

The JV Agreement also confirms that: Smith jointly represents all of the Talc clients;[11] Smith has a vast knowledge of Talc claims and a large volume of work product that Beasley planned to rely on;[12] Smith was expected to play a leadership role going forward, as Beasley agreed to support him "for co-lead counsel positions in all talc litigation, including any MDL, executive committee, class actions and AG

---

July 26, 2024, Beasley Allen did a good job of keeping the clients updated, right?" Smith responded, "I don't disagree with that." Transcript, p. 1846. *In re Red River Talc, LLC*; 24-90505.

[8] JV Agreement, at p. 2.

[9] *Id*. at p. 1.

[10] *Id*. at p. 2. (only disclosures required by the ethics rules).

[11] *Id*. ("We will jointly represent all of our talcum powder clients.")

[12] *Id*. at p. 1 ("[Y]ou will continue to provide [Beasley] with information regarding the nature of the claims arising from talcum powder, the support for those claims, the means to recognize viable claims, and all of the medical literature and expert witness information that your offices currently have and will develop *as this litigation progresses*." (emphasis added)).

suits," and *vice versa*;[13] and Smith and Beasley planned to "work together" on behalf of their joint clients going forward.[14]

In May 2020, J&J removed its Talc products from the market.[15] A manufacturer's removal of a product from the market is a milestone in any mass tort's progression toward settlement. A few days later, Beasley partner David Dearing praised Allen Smith: "I keep thinking back to the story you told years ago where Gene Wms [sic] approached you after the Berg verdict and told you you were not even a blip on JJ's radar, and nothing would ever come of this case. Well, you're a big ass blip now! And Gene's nowhere to be found on the litigation radar. Stay safe Giant Killa!"[16]

In 2024, however, Smith fell from grace in Beasley's eyes when he chose to support the Proposed Resolution.

Beasley still opposes the Proposed Resolution despite a $1.75 billion increase over J&J's prior proposal. Beasley's distaste for mass tort settlements through bankruptcy is well-known.[17]

---

[13] *Id*. at p. 2.
[14] *Id*. at p. 1.
[15] In the United States and Canada.
[16] Email from Beasley Principal David Dearing to Allen Smith, dated May 21, 2020 [Ex. B].
[17] *See* Special Master Order No. 25, *In re Johnson & Johnson Talcum Powder Products Marketing, Sales Practices, and Products Liability Litigation*; MDL No. 2738 (D.N.J. July 9, 2024) ("Beasley Allen is not the only plaintiffs firm that has a distaste for mass tort settlements in the bankruptcy system.").

Overnight, Beasley's praise turned to rancor. Beasley attacked Smith publicly to discourage support for the Proposed Resolution and to punish Smith for having the temerity to disagree with Beasley. Shortly thereafter, Beasley sued Smith.

### BEASLEY'S CLAIMS

Beasley's claims include breach of contract, fraudulent suppression, misrepresentation, and breach of fiduciary duty. (Doc. 69, p. 12, ¶46 – p. 20, ¶67).

### Breach of Contract

To state a claim for breach of contract in Alabama requires: "(1) a valid contract binding the parties; (2) the plaintiff's performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Barrett v. Radjabi-Mougadam*, 39 So. 3d 95, 98 (Ala. 2009) (*quoting Shaffer v. Regions Fin. Corp.*, 29 So. 3d 872, 880 (Ala. 2009)).

In its First Amended Complaint, Beasley claims Smith has breached the JV Agreement by:

    a.  Not paying 50% of the expenses;

    b.  Not performing 50% of the work;

    c.  Not transferring additional clients;

    d.  Not paying Beasley its share of fees for the additional clients;

    e.  Undercutting Beasley in settlement negotiations;

    f.  Changing client votes without authority or approval;

g.  Failing to "work together" with Beasley.

(Doc. 69, pp. 12-13, ¶49).

Beasley's breach of contract claims fail as a matter of law because Beasley has failed to perform obligations under the JV Agreement, which is a required element for breach of contract in Alabama.

Beasley's breach of contract claims also fail as to subparts (a), (b), (c), (d), (e) and (e) [sic] because: (1) Smith had no contractual duty to perform, and/or (2) Beasley has not been damaged.

(a)    Beasley alleges Smith breached the JV Agreement by failing to pay $735,584.67 in expenses. However, Beasley owes Smith expenses, which, based on information and belief, exceed the expenses Smith allegedly owes Beasley. Moreover, the Talc Litigation is ongoing. Thus, each party's final contribution toward expenses has not been calculated. Therefore, Beasley has not been damaged, which is required for breach of contract.

(b)    Beasley alleges Smith breached the JV Agreement by failing to perform 50% of the "work." However, Beasley's JV Agreement does not define "work" or how each party's "work" contribution will be calculated. For example, whether "work" will be determined based on the value of contributions to clients – such as Smith's trial victories, successful settlement negotiations on behalf of the State of Mississippi, delivery of massive value to clients in negotiations with J&J in

connection with the Red River Talc bankruptcy, or, alternatively, merely by the administrative hours that Beasley devoted to the matter without a single dime of recovery. Notably, the JV Agreement never once refers to the number of *hours* preformed by either firm. Had the parties wished to define their "work" by number of hours, they surely could have done so. Finally, "work" contributions cannot be calculated until the Talc Litigation is resolved. Therefore, the claim fails because Smith, as a matter of law, has no duty under the JV Agreement, as alleged herein, and because Beasley has not been damaged.

(c)    Beasley alleges Smith breached the JV Agreement by not transferring certain clients to Beasley for administrative handling. However, Beasley is not damaged by *not* having to handle administrative tasks for these clients. Therefore, the claim fails for lack of damages.

(d)    Beasley alleges Smith breached the JV Agreement by not paying Beasley its share of fees for certain clients not transferred to Beasley for administrative handling. However, the JV Agreement does not impose a duty on Smith to pay fees prior to settlement. Moreover, no settlement has been reached on behalf of these clients, no fees have been collected, no fees have been withheld from Beasley, and, therefore, Beasley has incurred no damages, which is required for breach of contract.

(e)     Beasley alleges Smith breached the JV Agreement by "interfering in, disrupting, and undermining global settlement discussions with Johnson & Johnson." However, Beasley's JV Agreement does not impose a contractual duty on Smith to agree with Beasley, or to refrain from advising his clients concerning matters he believes in his professional judgment to be in their best interests. Nor does Beasley's alleged oral agreement that only Beasley would be involved in settlement negotiations and decisions. To the contrary, any such prohibition on an attorney exercising his fiduciary obligations to clients would be void as a matter of public policy. Beasley has not identified any provision in the JV Agreement that was breached by Smith' alleged conduct. Moreover, Smith's involvement has resulted in a $10 billion Proposed Resolution worth $1.75 billion more than previously offered. The claim fails because Smith does not have the duty Beasley alleges and because Beasley has not been damaged by the alleged breach.

(f)     [Listed as (e) in the First Amended Complaint]. Beasley alleges Smith breached the JV Agreement by "purporting to change the votes of jointly represented clients to support the third bankruptcy plan without proper authority or consent from the clients." However, Beasley's JV Agreement does not impose a duty on Smith to agree with Beasley or to refrain from advising his clients concerning matters he believes to be in their best interests. Nor has Beasley identified any provision in the JV Agreement that Smith breached through the alleged conduct. Moreover, based on

information and belief, more than 75% of Talc claimants support the Proposed Resolution regardless of Smith's and Beasley's roughly 12,000 clients. Therefore, Beasley has not been damaged. Accordingly, the claim fails because Smith does not have the duty Beasley alleges and because Beasley has not been damaged by the alleged breach.

(g)    [Listed as (f) in First Amended Complaint]. Beasley alleges Smith did not "work together" with Beasley concerning settlement. However, Beasley's JV Agreement does not define the term "work together" and certainly does not impose on Smith a duty to agree with Beasley, or to refrain from advising his clients concerning matters he believes in his professional judgment to be in their best interests. Moreover, Smith's alleged failure to "work together," which is denied, resulted in a $10 billion Proposed Resolution worth $1.75 billion more than previously offered. Therefore, Beasley has no damage from the alleged breach. Accordingly, the claim fails because Smith does not have the duty that Beasley alleges and because Beasley has not been damaged by the alleged breach.

### Fraudulent Suppression

To state a claim of fraudulent suppression requires: "(1) a duty on the part of the defendant to disclose facts, (2) concealment or nondisclosure of material facts by the defendant, (3) inducement of the plaintiff to act, (4) action by the plaintiff to his or her injury." *Aliant Bank v. Four Star Invs., Inc.*, 244 So. 3d 896, 930 (Ala.

2017) (*quoting Freightliner, L.L.C. v. Whatley Contract Carriers, L.L.C.,* 932 So. 2d 883, 891 (Ala. 2005)). "The first element of a fraudulent-suppression claim that must be established is whether the defendant alleged to have concealed a material fact had a duty to disclose that fact to the plaintiff; this inquiry presents an issue of law to be determined by the court." *Id*. at 930 (*citing Freightliner*, 932 So. 2d at 891).

Beasley alleges Smith concealed that it:

a. "[D]id not have the financial and other resources to comply with the JV Agreement";

b. Could not or would not make the obligations under the JV Agreement the focus of Smith's practice to the exclusion of other litigation;

c. Did not interpret the JV Agreement to require Smith/PM to perform 50% of the total hours of "work" performed;

d. Had no intention of performing 50% of the total hours of "work" performed;

e. Had additional Talc clients;

f. Bought out PM;

g. Was engaged in negotiations with Johnson & Johnson on behalf of clients;

h. Had litigation financing debt.

(Doc. 69, pp. 15-16, ¶53).

Beasley's fraudulent suppression claims fail as a matter of law because: (1) Smith had no duty to disclose the facts that allegedly were concealed; (2) the facts allegedly concealed were well-known to Beasley; (3) Beasley did not rely on the allegedly concealed facts, and (4) Beasley has not been injured by the alleged concealment of any of the facts.

Smith addresses each of Beasley's fraudulent suppression claims and allegations below:

(a)    Beasley alleges Smith failed to make disclosures concerning its "financial and other resources to comply with the JV Agreement." (Doc. 69, p. 15, ¶53). However, conclusory allegations are insufficient to state a claim. First, Beasley's JV Agreement does not require Smith to make financial disclosures; certainly not the vague and subjective disclosures that Beasley alleges. Beasley easily could have required financial disclosures in its JV Agreement, but it did not. Second, Beasley had actual knowledge of Smith's financial condition. Knowledge of the allegedly-concealed fact is fatal to a fraudulent concealment claim. Third, Beasley did not rely on Smith's financial condition, which is required for fraudulent suppression. To the contrary, Beasley did nothing with its actual knowledge of Smith's financial condition. Fourth, Beasley has not been damaged by the alleged concealment. Again, Beasley has done nothing with its knowledge of Smith's

financial condition. Beasley's conclusory allegations concerning damages are insufficient to state a claim.

(b)    Beasley alleges Smith failed to disclose his alleged unwillingness or inability to make the talc litigation "the focus" of his law practice to the exclusion of other litigation. Whatever this means, the JV Agreement does not require it. Moreover, Beasley's conclusory allegations concerning Smith's "focus" are insufficient to state a claim. Indeed, they are wholly inconsistent with Beasley's own description of Smith's "focus" in the Talc Litigation. According to Beasley, Smith was a "Giant Killa!"[18] Conclusory allegations are insufficient to state a claim.

(c)    Beasley alleges Smith "did not interpret" the JV Agreement to require Smith/PM to perform "50% of the total hours" of "work" performed. However, Beasley's JV Agreement imposes no duty on Smith to "interpret" undefined terms in the JV Agreement to Beasley's liking, nor would a party's "interpret[ation]" of an undefined term support a fraudulent suppression claim. Such conclusory allegations are insufficient to state a claim. In fact, by admitting its JV Agreement requires interpretation of "work," Beasley concedes it imposes no such duty on Smith.

(d)    Beasley alleges Smith "had no intention" of performing 50% of the "work" under the JV Agreement. A conclusory allegation that Smith had a duty to disclose his "intention" concerning "work," which is undefined in the JV Agreement,

---

[18] Email from Beasley Principal David Dearing to Allen Smith, dated May 21, 2020 [Ex. B].

is insufficient to establish a duty or state a claim. Therefore, Beasley attempts to use its complaint to define its undefined term.

(e)    Beasley alleges Smith did not disclose additional Talc clients in which Beasley had a contractual interest. However, the alleged failure, which is denied, did not induce Beasley to act, which is an element required for fraudulent suppression. Moreover, the Talc Litigation has not been settled. Therefore, Beasley has not been deprived of its "contractual interest" in these clients, *i.e.*, damaged, which is a required element of fraudulent suppression.

(f)    Beasley alleges Smith failed to disclose its purchase of PM's interest in the JV Agreement. However, Beasley's JV Agreement does not preclude a party from purchasing another party's interest, nor does it impose any disclosure requirements on any party that chooses to purchase another party's interest. Moreover, the alleged failure to disclose is not alleged to have induced Beasley to act, which is a required element of fraudulent suppression. In fact, Beasley's JV Agreement treated Smith and PM as one party. In its First Amended Complaint, Beasley alleges that Smith had no intention of performing under the JV Agreement "with or without the involvement of [PM]." (Doc. 69, p. 15, ¶53). Beasley admits it viewed Smith and PM as one, and that Smith's alleged breach would have occurred regardless of PM's involvement. This confirms Beasley was not induced to act by Smith's alleged

failure to disclose its purchase of PM. Again, Beasley was not induced to act by the alleged failure to disclose, and therefore its fraudulent suppression claim fails.

(g)    Beasley alleges Smith concealed "parallel negotiations" with Johnson & Johnson. However, Beasley was aware of Smith's discussions with J&J. Therefore, there was no concealment, which is required for fraudulent suppression. Moreover, nothing in the JV Agreement requires "parallel negotiations" to  be disclosed.

(h)    Beasley alleges Smith concealed his litigation funding debt. However, the JV Agreement imposes no duty on Smith to disclose litigation financing. A duty to disclose is an element required for fraudulent suppression. Moreover, Beasley was aware of Smith's litigation financing debt. In fact, Beasley was actively involved in Smith's use of litigation financing. Beginning in 2018, at the latest, Beasley responded to requests from Smith's litigation financing companies for data and information concerning the Talc-client inventory. Beasley repeatedly provided data, explanations, and information requested by Smith's lenders. Not only was Smith's use of litigation financing in the Talc Litigation not concealed from Beasley, it was well-known to Beasley. Beasley had actual knowledge of Smith's debt to litigation financing companies, yet did nothing. Beasley did not terminate the JV Agreement, demand copies of the loans, demand to know the amounts; or seek to amend the JV Agreement to limit or preclude additional debt, or to require disclosures concerning

any of the foregoing. Beasley was not induced to act, nor was it damaged, by the alleged concealment, both of which are required elements of fraudulent suppression.

### Misrepresentation

To state a claim for fraudulent misrepresentation requires: "(1) that the representation was false, (2) that it concerned a material fact, (3) that the plaintiff relied on the false representation, and (4) that actual injury resulted from that reliance." *Aliant Bank*, 244 So. 3d at 928 (*quoting Boswell v. Liberty Nat'l Life Ins. Co.*, 643 So. 2d 580, 581 (Ala. 1994)).

"Section 6-5-101, Ala. Code 1975 provides that misrepresentation of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party…constitute legal fraud. Thus, reliance in the form that the misrepresentation is acted on by the opposite party is an essential element of fraud in Alabama." *Id*. at 924 (*quoting Hunt Petroleum Corp. v. State*, 901 So. 2d 1, 4-5 (Ala. 2004)). "Reliance requires that the misrepresentation actually induced the injured party to change its course of action." *Id*. (*quoting Hunt Petroleum*, 901 So. 2d at 4-5) (*quoting* Restatement (Second) of Torts § 537 (1977))). "An essential element of any fraud claim is that the plaintiff must have reasonably relied on the alleged misrepresentation." *Id*. (*quoting Hunt Petroleum*, 901 So. 2d at 4-5). "[F]or a plaintiff to state a fraud claim, he must show that a misrepresentation induced him to act in a way that he would not otherwise have acted, that is, that he took a different

course of action because of the misrepresentation." *Id*. at 925 (*quoting Hunt Petroleum*, 901 So. 2d at 4-5).

Beasley alleges Smith misrepresented its "intention" concerning "work" when it signed the JV Agreement. (Doc. 69, p. 19, ¶60).

Beasley drafted the JV Agreement, so, of course, Beasley knows it left the term "work" undefined. Beasley now claims, for the first time, that Smith and PM "represented" in negotiations preceding the JV Agreement that they would be "responsible for performing generally 50% of the *total hours of work performed* by the parties pursuant to the JV Agreement." (Doc. 69, p. 18, ¶58). However, Beasley did not allege its newfound definition of "work" in its original Complaint. Rather, Beasley raises it for the first time in its recently filed First Amended Complaint.

Regardless, the JV Agreement Beasley drafted and Smith signed does not include Beasley's new definition of "work." Smith is entitled to rely on the JV Agreement, as written. Beasley's conclusory allegation that it means something other than what it says is insufficient, as a matter of law, to support a misrepresentation claim.

**Breach of Fiduciary Duty**

To state a breach of fiduciary duty claim requires: (1) "the existence of a fiduciary duty," (2) "a breach of that duty," (3) "and damage suffered as a result of that breach." *Aliant Bank*, 244 So. 3d at 907 (*citing Regions Bank v. Lowrey*, 101 So.

3d 210, 219 (Ala. 2012)). "The determination whether a duty exists is generally a question of law for the court to decide." *Id*. at 908 (*citing Ex parte BASF Constr. Chems., LLC*, 153 So. 3d 793, 801-02 (Ala. 2013)).

"A fiduciary relationship is defined as: a relationship in which one person is under a duty to act for the benefit of another on matters within the scope of the relationship. Fiduciary relationships usually arise in one of four situations: (1) when one person places trust in the faithful integrity of another, who as a result gains superiority or influence over the first, (2) when one person assumes control and responsibility over another, (3) when one person has a duty to act for or give advice to another on matters falling within the scope of the relationship, or (4) when there is a specific relationship that has traditionally been recognized as involving fiduciary duties, as with a lawyer and a client or a stockbroker and a customer." *Id.* at 916 (*quoting Swann v. Regions Bank*, 17 So. 3d 1180, 1193 (Ala. Civ. App. 2008)).

Beasley's breach of fiduciary duty claim is wholly reliant on conclusory allegations which are insufficient to survive a 12(b)(6) motion. Beasley simply alleges the JV Agreement, an arm's length business transaction, created a "fiduciary relationship" between Beasley and Smith; that Smith "breached their fiduciary duties" to Beasley; and Beasley was damaged. (Doc. 69, p. 20, ¶65-67). Beasley fails to make any allegations specific to its breach of fiduciary duty claim. Rather, Beasley incorporates all allegations into all claims, thereby leaving Smith to guess at what

Beasley alleges in support of each claim. Accordingly, Beasley's breach of fiduciary duty claim fails to state a claim.

Beasley and Smith certainly were not in a fiduciary relationship prior to the JV Agreement. The JV Agreement is an arm's length transaction that defines the rights and obligations of the parties. Beasley cannot rewrite its JV Agreement 10 years after-the-fact through conclusory fiduciary duty allegations. Beasley alleges Smith gained superiority over Beasley through the JV Agreement, but, elsewhere in its First Amended Complaint, Beasley alleges the opposite - that Smith was required to defer to Beasley but refused. (Doc. 69, p. 9, ¶36; p. 10, ¶40). Beasley does not allege that Smith had control over Beasley, nor could it credibly do so. Even if a fiduciary relationship of some sort does exist between Smith and Beasley, it does not, and could not, as a matter of law, impose a duty on Smith to refrain from advising his clients or acting on their behalf when he believed it was in their best interests to do so. Accordingly, Beasley's fiduciary duty claim, based wholly on conclusory allegations, fails.

## RIPENESS

Beasley alleges Smith has breached and/or anticipatory breached an obligation under the JV Agreement to share Talc fees. (Doc. 69, p. 13, ¶56(d)). Beasley incorporates these damages into its claims for fraudulent suppression, misrepresentation, and breach of fiduciary duty. Specifically, Beasley alleges it was:

20

injured as set out in Count I of this Amended Complaint (breach of contract), and that it agreed in the JV Agreement to divide certain proceeds of the Talcum Powder Litigation equally with Defendants Smith and Smith Law to the full amount of which share of proceeds said Defendants are not entitled[.]

(Doc. 69, ¶56, 63, 67).

In doing so, Beasley makes claims and seeks damages for an alleged harm – the failure to share fees – that indisputably has not occurred. Beasley has no justiciable controversy related to these claims, and they must be dismissed for lack of subject matter jurisdiction. *See Stringfellow v. State Farm Life Ins. Co.*, 743 So. 2d 439, 441 (Ala. 1999).

In *Stringfellow*, the Alabama Supreme Court upheld the dismissal of plaintiff's fraud claim involving a vanishing-premium insurance policy. The Court concluded that plaintiff "would not have a justiciable controversy until he was required to make a payment after July 11, 1998", the date he alleged the defendant insurance company told him his policy would be self-sustaining. *Stringfellow* at 441. Because he filed the lawsuit prior to that date, the Court held that the case was not ripe and was properly dismissed. *Id.*; *See also Pontius v. State Farm Mut. Auto. Ins. Co.*, 915 So. 2d 557, 564 (Ala. 2005) (holding that plaintiff's breach of contract and bad faith claims were not ripe without a determination of whether liability existed on the part of an uninsured motorist, dismissing the case for lack of subject matter jurisdiction).

21

No ripe claim of any sort lies based on Beasley's allegations that it has been harmed by Smith's negotiation of the $10 billion Proposed Resolution. No ripe claim of any sort lies based on Beasley's allegations that it has been denied payment of Talc fees. J&J has not been found liable and has not paid damages, in settlement or otherwise. Thus, no fees have been earned. At this juncture, there is nothing for Smith and Beasley to divide.  The Proposed Resolution that Smith negotiated – the event that triggered Beasley to file its premature lawsuit - has not even been ruled upon by the bankruptcy court.

Beasley bears the burden to allege a bona fide, existing controversy of a justiciable character. Otherwise, the Court lacks jurisdiction. *Smith v. Alabama Dry Dock & Shipbuilding Co.*, 309 So. 2d 424, 429 (1975) ("Allegations which merely show that the plaintiff anticipates such a controversy may arise are not sufficient to invite judicial declaration of rights"). All of Beasley's alleged damages, described herein, are based, one way or another, on Smith's negotiation of the Proposed Resolution. Thus, Beasley's claims are premature because Beasley seeks damages for an injury that has not occurred. Beasley's claims, therefore, must be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1).

## STATUTES OF LIMITATIONS

In addition to the foregoing, all of Beasley's claims are barred, as a matter of law,[19] in whole or in part, by applicable statutes of limitations.

All but one of Beasley's breach of contract claims are barred by Alabama's six year statute of limitations. *See* Ala. Code § 6-2-34 (1975). Beasley's JV Agreement was executed on January 23, 2014. Beasley alleges that Smith breached the contract several different ways, but only two alleged breaches involve promises allegedly made in the contract: (1) that Smith/PM would perform 50% of the work and (2) that Smith/PM would pay 50% of the expenses. (Doc. 69, p. 12, ¶49). Beasley's claim that Smith failed to perform 50% of the work accrued the moment the contract was signed, since Beasley alleges Smith never intended to fulfill that promise. (Doc. 69, p. 15, ¶53 - p. 16, ¶55, 56; p. 18, ¶58 – p. 19, ¶60). Thus, the claim plainly expired on January 23, 2020, and is time-barred.[20]

The five other alleged breaches do not refer to any terms contained in the JV Agreement and, therefore, cannot serve as a basis for a breach of contract claim.

---

[19] "The question of when a reasonable person should have discovered a claim is generally a question of fact within the purview of the jury; however, that question may be decided as a matter of law when the facts are undisputed and the evidence warrants but one conclusion or, stated another way, when the evidence indicates that the plaintiff actually knew of facts that would have put a reasonable person on notice of the existence of a claim." *Id*. at 926 (*citing Bryant Bank v. Talmage Kirkland & Co.*, 155 So. 3d 231, 237-38 (Ala. 2014)).

[20] Beasley alleges Smith failed to fully reimburse its share of expenses since the third quarter of 2023. (Doc. 69, p. 12, ¶45). While disputed, the allegation states a breach claim that began to accrue on that date and, therefore, is not barred by the statute of limitations.

(Doc. 69, p. 13). Assuming, *arguendo*, that they could, these breaches also are barred by the six-year statute of limitations because Beasley alleges Smith did not intend to fulfill these obligations on January 23, 2014, when the JV Agreement was signed. (Doc. 69, p. 15, ¶53 - p. 16, ¶55, 56; p. 18, ¶58 – p. 19, ¶60). Based on Beasley's allegations, the alleged breaches occurred on the date the JV Agreement was signed, and not some later date when Beasley alleges it was damaged. *See Ishler v. C.I.R.*, 442 F. Supp. 2d 1189 (N.D. Ala.2006) (noting the well-settled rule under Alabama law that a breach of contract claim accrues on the date the contract is breached, not the date the plaintiff sustains actual damage as a result of the breach).

Beasley's fraudulent suppression claims are barred by the applicable two-year statute of limitations. *See* Ala. Code § 6-2-38(l) (1975). The facts Beasley alleges were concealed were known to Beasley before September 10, 2022. Therefore, Beasley's fraudulent concealment claims based on these alleged facts are barred.

Beasley's misrepresentation claims are barred by the applicable two-year statute of limitations. *See* Ala. Code § 6-2-38(l) (1975). The facts Beasley alleges were misrepresented were known to Beasley before September 10, 2022. Therefore, Beasley's misrepresentation claims based on these alleged facts are barred.

Beasley's breach of fiduciary duty claims are barred by the applicable two-year statute of limitations. *See* Ala. Code § 6-2-38(l) (1975). The occurrences that Beasley alleges breached Smith's fiduciary duties occurred, if at all, before

September 10, 2022. Therefore, Beasley's breach of fiduciary duty claims based on these alleged occurrences are barred.

## CONCLUSION

Defendants The Smith Firm, PLLC, and Robert Allen Smith, Jr. respectfully request that all claims against them by Plaintiff Beasley, Allen, Crow, Methvin, Portis & Miles, P.C. be dismissed, and that the Court award all other relief it may deem appropriate.

<div style="margin-left:40%">

s/  Joel D. Connally
Joel D. Connally
ASB-3751-Y72J
Attorney for the Smith Defendants
STRENGTH & CONNALLY, LLC
7020 Fain Park Dr., Ste. 3
Montgomery, AL  36117
T:  334-387-2121
Email:  jc@strengthconnally.com


s/ Gary Bufkin
Gary Bufkin
*Pro hac vice*
Attorney for the Smith Defendants
CARROLL BUFKIN, PLLC
1076 Highland Colony Parkway
600 Concourse, Ste. 125
Ridgeland, Mississippi 39157
T: 601-982-5011
Email:  tgb@carrollbufkin.com

</div>

## **CERTIFICATE OF SERVICE**

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Robert D. Segall (ASB-7354-E68R)
J. David Martin (ASB-7387-A54J)
COPELAND, FRANCO, SCREWS & GILL, P.A.
*Attorneys for Plaintiff*
Post Office Box 347
444 South Perry Street (36104)
Montgomery, Alabama 36101-0347
T: 334.834.1180 F: 334.834.3172
segall@copelandfranco.com
martin@copelandfranco.com

Bruce F. Rogers
Elizabeth N. Terenzi
BAINBRIDGE MIMS ROGERS & SMITH, LLP
*Attorneys for Defendant Porter Malouf, P.A.*
600 Luckie Drive, Suite 415
Birmingham, Alabama 35223
Telephone: (205) 879-1100
Facsimile: (205) 879-4300
brogers@bainbridgemims.com
bterenzi@bainbridgemims.co

s/ Joel D. Connally     ASB-3751-Y72J
*Attorney for Defendants*
*The Smith Law Firm, PLLC, and*
*Robert Allen Smith, Jr.*

26